## TOMMIE JORDAN V. THE STATE.

### No. 10155.   Delivered June 22, 1927.

**1.—Manslaughter—Requested Charge—Properly Refused.**

There was no error on a trial for murder to refuse requested charge of appellant, that when one is attacked at night he has the right to presume that the aggressor is armed, and means to inflict upon the person attacked, serious bodily injury.

**2.—Same—Requested Charge—Issue Not Raised—Properly Refused.**

Where no evidence presenting such issue was introduced, there was no error in refusing appellant's requested charge that if deceased met his death at the hands of some other person than the appellant, to acquit him.

**3.—Same—Continued.**

Nor was it error to refuse appellant's requested charge to the effect that if appellant entered into the fight or affray in an effort to separate the parties to acquit him.   Such charge did not correctly present the law of self-defense, nor was this issue raised by the evidence.

**4.—Same—Requested Charge—On Manslaughter—Eliminated by Verdict.**

Where, on a trial for murder, which results in a conviction for manslaughter, appellant's requested charges on manslaughter which are refused, passes out of the case by reason of the conviction for manslaughter.

**5.—Same—Requested Charge—Properly Refused.**

Appellant's requested charge that if he entered into the affray for the purpose of assisting his brother, not knowing that his brother was about to cut and kill the deceased, to acquit him, was properly refused, there being no evidence in the case raising such issue.   Numerous other requested charges were properly refused for the same reason.

**6.—Same—Evidence—Hearsay—Properly Excluded.**

There was no error in excluding a statement made by appellant to a witness, tendered to testify, that he, appellant, stated to witness, on the evening prior to the homicide, that he did not have a knife.   Such testimony was purely hearsay, and properly rejected.

**7.—Same—Evidence—Res Gestae—Properly Admitted.**

The declaration of appellant's brother made at the scene of the homicide, in appellant's presence, and before any parties to the affray had left the scene, "Come on and let's go.   It's just another dead son-of-a-bitch," was clearly a res gestae declaration and properly admitted.

**8.—Same—Separation of Jury—Not Shown.**

Where, during their deliberations, it was shown that two of the jurors stepped into an adjoining room to get away from the tobacco smoke, this act would not constitute a separation of the jurors, no injury resulting to appellant by reason thereof.

Appeal from the District Court of Angelina County. Tried below before the Hon. C. A. Hodges, Judge.

Appeal from a conviction of manslaughter, penalty two years in the penitentiary.

The opinion states the case.

*Tom F. Coleman* of Lufkin, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of manslaughter, and his punishment assessed at two years in the penitentiary.

It appears from the record that the appellant was indicted for unlawfully killing Hubert Sanders with malice aforethought on or about April 11, 1925, by stabbing him with a knife. It was the contention of the state, and evidence was introduced in support thereof, that the appellant, his brother, Rufus Jordan, and the deceased had attended a dance on the night of the homicide; that when the dance was over and the parties were leaving for their homes, Rufus Jordan became enraged at the deceased and cursed and abused him, calling him "a son-of-a-bitch;" and that deceased, after requesting the said Rufus Jordan to desist, without avail, slapped or struck him with his hand, whereupon the appellant, who was standing near and slightly to the rear of deceased, stabbed him in the neck, severing his jugular vein and causing his death immediately thereafter. .

The appellant contended that the cause of the trouble between his brother and deceased was a very undignified remark made by the latter to their sister upon her refusal to permit him to accompany her home. Rufus Jordan told deceased that "no one but a son-of-a-bitch" would talk to his sister that way, which was followed by harsh words between the two parties until the deceased struck Rufus with his hand. The appellant testified that at this point he caught hold of deceased and pulled him back with the sole intention of preventing a fight, and denied cutting deceased with a knife or seeing his brother do so.

The record discloses that Rufus Jordan was also charged with killing deceased, but that the indictment against him was dismissed because he was a juvenile.

The record contains nineteen bills of exception.

In bills 1 and 7 complaint is made to the refusal of the court to give to the jury appellant's special charges to the effect that where one is attacked at night he has a right to presume that .

the aggressor is armed and means to inflict upon the person attacked serious bodily injury, and that the party attacked has a right to rely on these presumptions in repelling the attack. We are of the opinion that the court committed no error in refusing these special charges.

Bill of exception No. 2 complains of the refusal of the court to give to the jury appellant's special charge to the effect that if they believed that Rufus Jordan or some other person killed the deceased, and that the appellant did not act together with such person or persons, to acquit him. There was no error in the refusal of this charge, since the evidence did not raise the issue that the deceased met his death at the hands of some person other than appellant or Rufus Jordan.

The refusal of the court to give special charge No. 3, relative to deceased acting as a principal in the affray, as set out in bill of exception No. 3, shows no error, as the court's general charge covered this phase of the case.

In bill No. 4 complaint is made to the refusal of the court to give appellant's special charge No. 4 to the effect that if the jury believed that the appellant entered into the fight or affray in an effort to separate the parties, to acquit him. The refusal of this charge was not error, in view of the fact that this charge did not take into account the acts of the appellant thereafter, the evidence of the state showing affirmatively that appellant cut and killed the deceased.

In bill 5 complaint is made to the refusal of the court to submit to the jury appellant's special charge No. 5 on manslaughter. This issue passes out of the case by reason of the fact that the verdict of the jury found appellant guilty of manslaughter.

Bill No. 6 complains of the refusal of the court to give to the jury appellant's special charge to the effect that the undisputed evidence in the case showed that the appellant was not acting with his brother, Rufus Jordan, in the commission of the offense, and that if they had a reasonable doubt as to whether appellant did the killing, to acquit him. This charge was upon the weight of the testimony and was properly refused by the court.

In bill No. 8 complaint is made to the refusal of the court to give appellant's special charge to the effect that if the jury believed that appellant, upon seeing an attack being made upon his brother, entered into the affray merely for the purpose of assisting his brother, not knowing that his brother was about to cut and kill deceased, to acquit him. The court committed no error in refusing to give this charge, for the reason that the appellant's defense did not raise this issue. On the contrary,

the appellant contended that he was merely attempting to separate the parties, and not that he entered the fight in defense of his brother.   The court's main charge covered all the phases of appellant's right to defend his brother raised by the testimony.

In bill 9 complaint is made to the refusal of the court to give to the jury appellant's special charge to the effect that in order to authorize appellant to defend his brother against an unlawful attack threatening serious bodily injury or death, the danger need not have been real or actual, but that under the circumstances appellant would have had such right whether the danger was real or apparent.   This issue as to apparent danger was not raised by the evidence.   The appellant testified that he did not see a weapon of any kind in the hands of deceased during the fight or before, and the court's general charge covered such issues on self-defense as were raised by the evidence.

Bill 10 complains of the refusal of the court to give appellant's special charge on intent.   This charge is merely a meager abstract proposition of law and does not attempt to apply the law to any facts in the case, and, if given, would have been confusing to the jury.   There was no error in the court's refusal to give this charge.

In bill No. 11 complaint is made to the refusal of the court to give to the jury appellant's special charge to the effect that if the appellant cut and killed deceased with a knife, but that if at the time he did so it reasonably appeared to him that the deceased had made or was about to make an unlawful assault upon his brother which might result in death or serious bodily injury, the appellant would be entitled to an acquittal.   The court fully covered this phase of the case in his general charge, and committed no error in refusing this special charge.

Bill No. 12 complains of the court's charge on principals.   We are of the opinion that this criticism is not well founded.

In bill 13 complaint is made to the refusal of the court to permit appellant to prove by Charley Bonner that on the evening prior to the homicide he heard the appellant say that he did not have a knife.   This bill is qualified by the court to the effect that the witness testified that he did not know whether the appellant was present at the time inquired about or not, but that he was somewhere close around, and to the further effect that said testimony was remote and hearsay.   This bill, as presented, shows no error.

In bill 14 complaint is made to the opening argument of the district attorney, in which he stated that the older brother of appellant was not present at the difficulty, but had gone home

to take his sister, who was drunk, and to the closing argument of the private prosecuting attorney, Fairchild, in which he called appellant an assassin. The court withdrew these statements from the jury and instructed them not to consider same. These bills show no reversible error.

Bill 15 complains of the action of the court in permitting the state to prove by the witnesses Havard and Gann that Rufus Jordan, after the fight, stated, "Come on and let's go. It's just another dead son-of-a-bitch." The appellant contends that this statement was made after the difficulty, and that there was no evidence showing a conspiracy between Rufus Jordan and himself. The court, in qualifying this bill, states that the testimony was admitted as a part of the res gestae, that the statement was made at the scene of the homicide while all of the parties, including the appellant, were there, and that it was part of the main transaction and made just before the appellant and Rufus Jordan and the other members of the family left the scene of the homicide in their car. This bill, as presented, shows no error.

Bill No. 16 complains of the alleged separation of the jury, and of a statement made in the jury room relative to appellant's sisters being "crooked." The evidence on motion for new trial showed that while the jurors were in the barber shop shaving themselves, the juror Barnes walked to the door of the shop in order to escape the tobacco fumes, which were distasteful to him; and that while the jurors were deliberating upon their verdict in one of the two adjoining rooms assigned to them, most of them smoking at the time, the jurors Barnes and Noble stepped into the other room in order to get away from the smoke. We are of the opinion that this evidence fails to show a separation of the jurors, or any injury resulting to appellant by reason thereof. The statement made in the jury room relative to appellant's sisters seems to have been the jury's argument based upon the testimony introduced on the trial, and not made by any juror as a statement of fact. We are of the opinion that this bill of exception shows no error. Jacks v. State, 20 Tex. Crim. App. 656.

What we have said in discussing bill 9 is applicable to bill 17.

Bill 18 complains of the court's charge on the law of principals, it being contended that same was upon the weight of the testimony. We are not in accord with this contention.

In bill of exception 19 complaint is made to the charge of the court on the law of manslaughter. The jury having found

appellant guilty of manslaughter, this issue passes out of the case.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.